LENORA BUNKER *vs.* GEORGE F. BUNKER ET ALS.

Hancock.        Opinion March 3, 1931.

*Deasy, Lyman, Rodick & Rodick*, for plaintiff.
*William B. Blaisdell*, for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

STURGIS, J. Bill in Equity for the construction of the will of James W. Bunker, late of Gouldsboro in Hancock County. The

case is reported on Pleadings and Docket Entries supplemented by an Agreed Statement of Facts.

After providing for the payment of his debts, funeral charges, and expenses of administration, and the perpetual care of family burial lots, the testator included the following paragraphs in his will:

"2. In the event of my wife living at my decease I give all the rest, residue and remainder of my property, real, personal and mixed of whatsoever the same may consist and wheresoever situated to her for and during her natural life. The income to be used for her support with the express provision that she shall have the right to use any part of or the whole of the principal if necessary for her comfort, enjoyment or support and that she and Rubie J. Tracy, one of the Trustees of my Will hereinafter named are to be the sole judges of what is necessary."

"3. In the event that my said wife, Lenora Bunker, shall not be living at my decease, I give, devise and bequeath all said rest, residue and remainder mentioned in paragraph 2 above as follows, to wit: To my brother, George B. Bunker of Brighton, Mass., or his issue by right of representation, one-fourth (¼) part; to my nephew, Harry E. Hooper of Winter Harbor, Maine, or his issue by right of representation, one-fourth (¼) part; to my wife's sister, Abbie Bunker of South Gouldsboro, Maine, or her issue by right of representation, one-fourth (¼) part; and to the children of Rubie J. Tracy, being the children of my wife's brother, the late Bedford T. Tracy, or the survivors or survivor of them, one-fourth (¼) part; Should any of the persons named in this paragraph (3) not be living at my decease, his or her share shall be regarded as a lapsed legacy, and said share shall be divided among the survivors named in this paragraph in the same proportion that the share of each bears to the whole of said rest, residue and remainder."

"5. Having confidence in the integrity and business ability of the above-named Rubie J. Tracy and Harry E. Hooper,

and desiring that my wife shall have assistance in taking care of the property hereinabove bequeathed and devised to her, I hereby appoint the said Rubie J. Tracy and Harry E. Hooper and my wife, Lenora Bunker, to the Trustees of whatever property comes to my said wife under Paragraph '2' hereinabove. I direct that no bond be required of either of my Trustees in said capacity."

Executors were named in the fourth paragraph and the will concludes with the usual attestation clause.

The testator died without issue. Lenora Bunker, the complainant, was the "wife" referred to in the several paragraphs of the will. The provisions of the third paragraph were dependent for testamentary operation on her dying before the testator. This contingency did not happen and the residuary gifts there made lapsed. The will is left without residuary provision and the remainder after the estate of the complainant must pass as intestate property.

The complainant's survival of her husband satisfied the contingency of the second paragraph of the will and gave full force and effect to the provisions there made for her benefit, subject, however, to the trust created in the fifth paragraph.

Standing alone, the second paragraph gives the complainant a life estate with power of disposal as her necessary comfort, enjoyment and support may require and her judgment and that of Rubie J. Tracy, referred to as a trustee, may dictate. *Mallett* v. *Hall*, 129 Me., 148; *Loud* v. *Poland*, 126 Me., 45; *Young* v. *Hillier*, 103 Me., 17. This provision is qualified, however, by the trust created in the later paragraph, and the estate of the complainant must be construed to be an equitable estate for life with the legal title vested in the trustees named.

This is the expressed intention of the testator. Indicating a desire that his wife should have assistance in "taking care of the property" bequeathed and devised her for life, the testator, in the fifth paragraph, appoints Rubie J. Tracy and Harry E. Hooper co-trustees with the complainant and exempts each from giving bond. The will indicates a purpose to insure to the complainant a full and certain enjoinment of her husband's estate, measured only

by her comfort, enjoyment, and support, and free from the risks of possible improvidence or mismanagement.

The trust is not dry or passive merely. The trustee, Rubie J. Tracy, is charged with the duty of assisting the complainant in the determination of her necessary use of the principal of the trust property. The three trustees are expressly charged with its proper care. The testator made his trustees something more than mere depositaries of title and created an active trust. *Hinds* v. *Hinds*, 126 Me., 527; *Dixon* v. *Dixon*, 123 Me., 470; *Sawyer* v. *Skowhegan*, 57 Me., 500.

There being no plain intention to the contrary expressed in the will, the trustees are entitled to possession of the trust estate and for the life of Mrs. Bunker are chargeable with its care and the administration of it for her benefit. Sufficient estate is vested in them by application for a proper execution of the trust. *Edwards* v. *Packard*, 129 Me., 74; *Slade* v. *Patten*, 68 Me., 380.

The *Cestui Que Trust* is one of the trustees and in that capacity she has a common and undivided authority and power in the administration of the trust. She can not be rightfully excluded from possession of the trust property. *Cox* v. *Walker*, 26 Me., 504; *Church* v. *Stewart*, 27 Barb. (N. Y.), 553; 39 Cyc., 307.

It is expressly provided in the second paragraph that the income of the trust property accruing during the complainant's life is "to be used for her support." Immediately following this provision, however, the testator directs that so much of the principal of the trust property as is necessary may be used for the complainant's comfort, enjoyment and support. Read together, these two provisions indicate an intention that the complainant may use both income and principal for comfort and enjoyment as well as her bare support. When income is exhausted, principal may be used as necessary.

While it would appear that the testator anticipated that his widow would require the entire income of his estate for her support, we do not find an express or implied intention on his part to make an outright gift of income to her, making unexpended balances her own property and assets of her estate at her decease. The income was to be "used for her support." If not so used, we think,

unexpended income remaining at the death of the complainant in the possession of the surviving trustees or otherwise traced and identified must be included within the residuary estate to be then distributed as intestate property.

As already stated, the testator, by the appointment of his widow as one of his trustees, placed her in common possession of the corpus of the estate. His language in the second paragraph of the will indicates an intention that the widow should personally use income and necessary principal for the purposes specified. The trustees are warranted, we think, in paying over to the complainant all of the income after payment of proper trust expenses chargeable thereto and so much of the principal as Rubie J. Tracy and the complainant may approve. At the complainant's decease, her estate will be accountable for any part of such money so paid to her which is not spent for the purposes specified in the will.

Conceding that the remainder of the testator's estate, after her equitable estate for life, is intestate property, the complainant claims an interest therein under the Rules of Descent and the law of distribution of this state. Of record she has not waived the provisions of her husband's will. She here claims both under the will and under the statutes.

By R. S. (1916), Chap. 80, Sec. 1, in effect when this testator died, one-half the real estate of a person deceased intestate, subject to certain payments and certain exceptions, descends, if he has no issue, to his widow. By Section 13 of the same Chapter, when a specific provision is made in a will for the widow of a testator, such legatee or devisee may within six months after probate of the will and not afterwards, with certain exceptions not here involved, make election and file notice thereof in the Registry of Probate whether to accept said provision or claim her right and interest by descent under Section 1. This Section then contains this provision:

"But is not entitled to both, unless it appear by the will that the testator or testatrix plainly so intended."

By Section 14 of the same Chapter, when a provision made in a will for a widow is waived or no such provision is made, the widow, upon election and notice, shall have and receive the same share of

the real estate and the same distributive share of the personal estate of such testator as is provided by law in intestate estates. And Section 20 provides that the personal estate of an intestate, except that portion assigned to his widow by law and the Judge of Probate, shall, after payment of his debts, funeral charges and charges of settlement, be distributed by the rules providing for the distribution of real estate.

Section 13 of Chapter 80 relates only to a widow's right by descent in the real estate of her husband upon her waiver of the provisions of his will for her benefit or his failure to so provide for her. It is a reënactment of Sec. 13, Chap. 77, R. S. 1903, which is a restatement of Sec. 5, Chap. 157, P. L. 1895, the Act by which the right of dower was abolished in this state and the widow given a right by descent in the lands of her husband.

In *Cheney* v. *Cheney*, 110 Me., 61, this Court says that the sole purpose of Chap. 157, P. L. 1895, was to

"change dower from a life interest to an estate in fee. It did not pretend to affect the quantity of the estate nor the nature of the right, * * . * *

"Section 4 (5) provides for the waiver of the specific provision of the will, which is also identical with the right under the rule of dower * * . It, therefore, appears from an analysis of the Statute of Descent, touching the widow's rights, that the properties and characteristics of the new estate are practically the same as those of the dower estate. All the bars and releases are identical in meaning although changed in phraseology in condensing. * *

"It would appear then that, when the Statute of 1895 became a law, the only change the Legislature intended to make, or in the use of the language employed did make, was to enlarge the interests of the widow by giving her an estate for life. In all other respects, whether there was a will or no will or a will with no provision for her, her interest in the lands of her husband was not affected, nor were her rights in the personal estate of her husband altered in the least or even referred to in this act."

And in *Clark* v. *Trust Company*, 116 Me., 450, 452, in a construction of Sec. 13, Chap. 80, R. S. 1916, it is held:

"When the right of dower was abolished and the widow given a right by descent in the estate of her husband, the same statutory provisions for waiving the provisions of the will and accepting the rights given to her by law were retained. In all the Courts in which the subject has been discussed, it has been held that the privilege of waiving the provisions of the will and accepting the provisions made by law are the same whether it is a dower right or a right by inheritance."

Given the right to waive the provisions made for her in her husband's will and claim dower by the first statutes of this state (Sec. 15, Chap. 38, Laws of 1821), by the Revision of 1840, Chap. 95, Sec. 13, a widow was expressly required to make her election whether to accept the provision made for her in her husband's will or claim her dower, but was barred from taking both by the restriction "but shall not be entitled to both unless it appears by the will that the testator plainly so intended." This statute was reënacted verbatim in subsequent Revisions and appears as Sec. 5, Chap. 65, R. S. 1883, in force when the Act of 1895 abolished dower.

Under these earlier statutes, by acceptance of the provisions of her husband's will, the widow was deemed to have waived her right of dower. *Hastings* v. *Clifford*, 32 Me., 132; *Bubier* v. *Roberts*, 49 Me., 460, 464. The provision in her husband's will operated as an offer to the widow which she might accept or refuse. If she accepted it, she lost her dower, not by the testamentary act of her husband, but by her voluntary acceptance of a substitute. 9 R. C. L., 601. The language of these statutes does not indicate an intention to exclude intestate lands from their operation. Neither reason nor precedent so dictates.

The "properties and characteristics" of the dower estate, so far as a widow's privilege of waiving the provisions of a will and accepting the provisions made by law are concerned, being retained and attaching to the estate by descent given her in the Act of 1895 and carried through the Revisions into Sec. 13, Chap. 80, R. S.

1916 (*Cheney* v. *Cheney*, supra; *Clark* v. *Trust Co.*, supra), a like construction must be given to Section 13 and the complainant here held to be barred from any right by descent in the real estate of her husband. No contrary intention plainly appearing in the will, her apparent voluntary acceptance of the equitable life estate, which he provided for her, effects this result.

Section 14 of Chapter 80 is a reënactment of Chap. 260, P. L. 1909, which amended that part of Sec. 13, Chap. 77, R. S. 1903, which was a restatement of Chap. 221, P. L. 1897. The Amendment of 1909 did not modify or enlarge the scope of the Act of 1897, its only purpose and effect being to remove existing ambiguities in the Revision of 1903. *Cheney* v. *Cheney*, supra.

Prior to 1897, a widow, upon waiver of her husband's will, had no right to a distributive share of his personal estate except as an allowance was made to her by the Judge of Probate. R. S. 1893, Chap 65, Sec. 21, and earlier statutes. A new right in her husband's personalty additional to and independent of her right of descent in his realty was given the widow by Chap. 221, P. L. 1897.

The term "dower," as used in the statutes, had reference to real estate, and the widow's election between dower and her husband's will did not involve her right to share in his personal estate. *Chase* v. *Alley*, 82 Me., 234, 236; *Dow* v. *Dow*, 36 Me., 211, 216; *Brackett* v. *Leighton*, 7 Me., 383; *Perkins* v. *Little*, 1 Me., 148. And, although a widow elected to accept her husband's will and thereby was barred from her claim of dower, it was held, under similar statutes, that she might share in his intestate personalty. *Kempton, Appellant*, 23 Pick. (Mass.), 163; *Nickerson* v. *Bowly*, 8 Metc. (Mass.), 424; *Dole* v. *Johnson*, 3 Allen (Mass.), 364; *Johnson* v. *Goss*, 132 Mass., 274; *Wood* v. *Mason*, 17 R. I., 99.

There is no express provision in the Act of 1897 nor in any of its reënactments barring a widow from taking both the distributive share of her husband's personal estate there given and any provisions in his will made for her benefit. The Act of 1897 had no relation to Chap. 157, P. L. 1895, or to the subject matter of it. *Cheney* v. *Cheney*, supra, p. 66. And, through the Amendment of 1909 and its subsequent reënactments as Sec. 14, Chap. 80, R. S. 1916, it appears to have retained a like independence.

In 1902, when the Acts of 1895 and 1897 referred to were in full force and effect, this Court, in *Torrey* v. *Peabody*, 97 Me., 104, held that, where a testator gave his wife a life estate in his entire property with power of disposal and made no other disposition of his estate, if not appearing in the will that the testator intended to give his undisposed-of personalty to the heirs of his body, the widow took her distributive share of the personalty remaining after her life estate, although she accepted the provisions of the will. We find nothing in subsequent legislation inconsistent with the application of this rule in the case at bar.

The intention of the testator, as expressed in his will, must prevail. His primary purpose, as there disclosed, is to preserve the principal of his entire estate intact during the lifetime of his widow to the end that no risk may attach to her enjoyment of it. A merger of the widow's equitable estate and statutory right of distribution in intestate personalty would thwart the plain mandate of the testament. The widow's present enjoyment of her husband's personalty is measured by her equitable life estate and her power of disposal within the terms of the Trust, except as she may in her lifetime alienate her statutory interests therein by will or other assignment effective at her decease.

When the widow dies, the real estate and one-half the personalty then remaining will pass, respectively, to the testator's heirs and personal representatives as of the date of his death. The other half of the personalty then unexpended must be paid to the widow's personal representatives or her assigns.

*Bill sustained with one bill of costs for plaintiff and one bill of costs for the defendants. Reasonable counsel fees shall also be allowed by the sitting Justice to attorneys on both sides, to be paid from the estate and allowed to the executors in their account.*

*Decree accordingly.*